**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

LEXICON, INC.                                                                                                    PLAINTIFF

v.                                            Case No. 4:09CV00067 JLH

ACE AMERICAN INSURANCE COMPANY and
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA                                                                                    DEFENDANTS

**OPINION AND ORDER**

Lexicon, Inc., commenced this action against ACE American Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA, seeking a declaratory judgment regarding insurance coverage under ACE and National Union policies, seeking reformation of the National Union policy,[1] and alleging breach of contract against ACE and National Union. National Union has also filed a counterclaim for a declaratory judgment that its policy does not provide coverage to Lexicon for the damages alleged in the complaint. Four motions for summary judgment have been filed. For the following reasons, the motions of ACE and National Union are granted, and the motions of Lexicon are denied.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial

---

[1]Lexicon has since moved for, and the Court has granted, leave to file a first amended complaint adding a claim for reformation of the ACE policy.

responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). A genuine issue exists only if there is sufficient evidence to allow a finder of fact to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

**II.**

The following material facts are undisputed. This case is a dispute over an insurance claim arising out of a silo collapse and based on a Commercial General Liability (CGL) insurance agreement . Lexicon, a general contractor, contracted with Nu-Iron Unlimited to construct silo storage bins at Nu-Iron's facility in Trinidad, West Indies. Lexicon subcontracted the fabrication and erection of the silos to Damus Limited. Silo No. 8 collapsed, destroying the silo and other equipment and damaging adjacent silos and the products they stored, direct-reduced iron (DRI) pellets. The complaint alleges that the collapse was unexpected and unforeseeable and was caused by faulty welds performed by Damus.[2]

Nu-Iron demanded that Lexicon repair and remediate the damage, and Lexicon demanded that Damus repair and remediate the damage. Damus's insurer, Beacon Insurance Company, denied both Damus's and Lexicon's claims. Lexicon agreed to subcontract with Damus to rebuild Silo No. 8 for a contract price of $1 million, allegedly with the approval, assistance, and participation of ACE

---

[2]The amended complaint alleges that both Damus and Lexicon negligently supervised and failed to properly inspect or test the work of Damus's employees.

2

as the primary liability insurer. Lexicon says it incurred additional costs in mitigating Nu-Iron's other losses caused by the silo collapse and damage to the DRI.

Lexicon alleges that it placed ACE and National Union on notice of the unexpected and unforeseeable collapse, but ACE and National Union refused to provide coverage for the loss. Lexicon alleges that National Union's umbrella policy mistakenly omitted in its schedule of underlying insurance the ACE policy, which provided foreign liability coverage, even though National Union was fully aware of the ACE foreign liability coverage. Lexicon says that the schedule of underlying insurance erroneously listed as the foreign liability insurer Liberty Mutual Insurance Company, which is Lexicon's domestic liability insurer, instead of ACE. Lexicon asserts that listing Liberty Mutual instead of ACE was a clerical or scrivener's error, or in the alternative, that it was a material mistake caused by a mutual or unilateral mistake. Therefore, Lexicon asks for a declaratory judgment that ACE and National Union are obligated to indemnify Lexicon for its losses, asks that the Court reform the ACE and National Union contracts due to mutual or unilateral mistake, and claims that ACE and National Union have breached their contracts with Lexicon.

## III.

The following motions for summary judgment are pending before the Court: (1) a motion by National Union seeking summary judgment on all claims for coverage under its insurance policy issued to Lexicon; (2) a motion by ACE seeking summary judgment that Lexicon's claims fall outside of the scope of coverage afforded by the ACE policy; (3) a motion by Lexicon seeking partial summary judgment as to ACE's obligation to provide coverage to Lexicon under the ACE policy; and (4) a motion by Lexicon for partial summary judgment as to National Union's obligation to provide excess coverage to Lexicon under the National Union policy.

All four motions for summary judgment center around the same ultimate issue: whether the ACE or National Union insurance policy provides coverage for Lexicon's damages associated with the collapse of Silo No. 8 in Trinidad. The Court has studied the parties' briefs, arguments, and supporting case law, as well as the exhibits submitted with the motions for summary judgment. The parties have submitted many arguments in support of their respective motions for summary judgment, but the Court finds one of ACE's arguments to be dispositive of the case. Summary judgment is granted in favor of ACE. Because the ACE policy does not provide coverage, National Union's motion for summary judgment is also granted, and Lexicon's motions for summary judgment are denied.

**A.    ACE'S MOTION FOR SUMMARY JUDGMENT**

ACE has submitted a motion seeking summary judgment that Lexicon's claims fall outside of the scope of coverage of the ACE policy. ACE seeks summary judgment for the following reasons: (1) the CGL portion of the ACE policy, which is the portion under which Lexicon asserts claims against ACE, is subject to a "Designated Premises or Projects Endorsement," which restricts coverage to premises and projects scheduled in the endorsement, and which does not list Lexicon's Trinidad project[3]; (2) under Arkansas law, Lexicon's claim is based on defective workmanship and

---

[3]ACE contends there is no disputing that policy no. PHFD36909006 is the operative policy. The "Designated Premises or Projects Endorsement" portion of that policy does not name the Trinidad project:

> This endorsement modifies insurance provided under the following:
>     COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> SCHEDULE
> Premises:
> Project:
>     NO PROJECT OR JOBS AT THIS TIME
> This insurance applies only to "bodily injury," "property damage," "personal injury,"

4

which is not an "occurrence" insured by the policy; (3) the "Your Product" exclusion bars claims for remedying defects in goods provided by Lexicon[4]; and (4) because Lexicon seeks recovery for contractual obligations, rather than tort liability, its claims are barred under the policy's limitation to amounts for which Lexicon is "legally liable" and by the policy's Contractual exclusion.[5] The

---

"advertising injury" and medical expenses arising out of:
1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

All other terms and conditions remain unchanged.

[4]The exclusions section of the ACE policy reads, in pertinent part:

This insurance does not apply to:
. . .
"Property Damage" to "Your Product"
"Property damage" to "your product" arising out of it or any part of it.

"Property Damage" to "Your Work"
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

[5]The ACE policy reads, in pertinent part:

Insuring Agreement
We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
. . .
This insurance does not apply to:
. . .
Contractual
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
1. Assumed in a contract or agreement that is an "insured contract"; or
2. That the insured would have in the absence of the contract or agreement.

5

Court is persuaded that ACE's second argument—that Lexicon's claim does not constitute an "occurrence" and thus is not covered by the CGL policy—to be dispositive, and thus the Court will not address at length ACE's other arguments.

The ACE policy is a CGL policy that provides general liability coverage in the event of an "occurrence." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ACE argues that, under Arkansas law, an insurance claim based on faulty workmanship of a subcontractor is considered a foreseeable event and does not constitute an "occurrence" or "accident" for purposes of coverage under a CGL policy.

Several cases are instructive on the issue of whether Lexicon's claim constitutes an "occurrence" under ACE's CGL policy. In *Nabholz Constr. Corp. v. St. Paul Fire and Marine Ins. Co.*, 354 F. Supp. 2d 917 (E.D. Ark. 2005), Judge Eisle of the Eastern District of Arkansas considered a matter of first impression in Arkansas: whether a CGL policy provides liability coverage for deficiencies in construction work. The CGL policy at issue provided coverage for "amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or premises damages that . . . is caused by an event." *Nabholz*, 354 F. Supp. 2d at 919. Relying on the reasoning articulated in *Lerner Corp. v. Assurance Co. of Am.*, 120 Md. App. 525, 707 A.2d 906 (1998)—as well as the general principles outlined in *United States Fid. & Guar. Co. v. Continental Cas. Co.*, 353 Ark. 834, 120 S.W.3d 556 (2003) and *Unigard Sec. Ins. Co. v. Murphy Oil*, 331 Ark. 211, 962 S.W.2d 735 (1998)—the court determined that a contractor's obligation to repair or replace its subcontractor's defective workmanship was not "unexpected" on the part of the contractor, and thus did not constitute an "event" covered by the CGL policy. *Id.* at

920-21. The court predicted that the Arkansas Supreme Court would join the majority of jurisdictions holding that defective workmanship does not constitute an "occurrence" in similar policies. *Id.* at 922. The court went on to note that a different mechanism, performance bonds, existed for a contractor to insure the work of its subcontractor:

> The Court is further persuaded by the distinctions between CGL policies and performance bonds. The purpose of a CGL policy is to protect an insured from bearing financial responsibility for unexpected and accidental damage to people or property. It is not intended to substitute for a contractor's performance bond, the purpose of which is to insure the contractor against claims for the cost of repair or replacement of faulty work.

*Id.* Thus, the court concluded that the contractor could not recover the damages associated with its subcontractor's faulty construction, "which resulted in a foreseeable breach of contract." *Id.* at 923.

In *Essex Ins. Co. v. Holder*, 370 Ark. 465, 261 S.W.3d 456 (2008), the Arkansas Supreme Court answered the following question certified to it by the undersigned: Does defective construction or workmanship, including failure to complete work, delays in construction, or failure to procure qualified subcontractors, constitute an accident and, therefore, an occurrence within the meaning of commercial general liability insurance policies? The Supreme Court discussed at length the federal district court's decision in *Nabholz*, as well as the cases upon which it relied, *Murphy Oil* and *Continental Cas. Co.* Ultimately, the Supreme Court held:

> Faulty workmanship is not an accident; instead, it is a foreseeable occurrence, and performance bonds exist in the marketplace to insure the contractor against claims for the cost of repair or replacement of faulty work. Accordingly, we hold that defective workmanship standing alone—resulting in damages only to the work product itself—is not an occurrence under a CGL policy such as the one at issue here.

*Essex*, 370 Ark. at 540, 261 S.W.3d at 460.

Finally, in *Cincinnati Ins. Co. v. Collier Landholdings, LLC*, 614 F. Supp. 2d 960 (W.D. Ark. 2009), cited by ACE, the district court faced a case factually similar to this one. There, a contractor entered into a building agreement with a subcontractor. After substantial completion, water infiltrated the building through the ceiling, walls, and floor, causing mold to germinate in the interior walls. The contractor made a claim under its CGL policy, but the insurer denied its claim for coverage, finding that there was no "occurrence" under the policy. The district court discussed the analysis in both *Nabholz* and *Essex*, and held that defective workmanship "is a foreseeable risk associated with the employment of subcontractors." *Collier Landholdings*, 614 F. Supp. 2d at 966. The district court further discussed why the contractor was afforded protection under a performance bond, rather than a CGL policy:

> The performance bond is the proper instrument for protection against financial loss arising from the repair and remediation of defective construction. It protects the general contractor to the extent of his or her work, irrespective of whether subcontractors performed certain aspects of that work. In other words, a general contractor cannot segment his or her work into that performed by various subcontractors, some of which is defective and some of which is not, in order to create an "occurrence." Accordingly, because the defective construction alleged by [the contractor] is not an "occurrence" under the CGL policy issued by [the insurer], [the subcontractor] is not entitled to recover the repair and remediation cost arising from its defective workmanship under the policy.

*Id.* (internal citations omitted). The district court summarized:

> [The contractor and subcontractor] entered a contractual agreement for the construction of the [building by the subcontractor]. To the extent that damages result from the breach of that contract, even if an "occurrence" other than defective workmanship could be identified, the damages cannot be said to be the result of "property damage" under Arkansas law. Simply, the failure to perform contractual obligations is not "property damage." This interpretation is consistent with the idea that a performance bond exists to cover a contractor's known contractual risk in a construction project. Thus, there is no coverage under the CGL policy issued by [the insurer] for damages arising from [the subcontractor's] alleged breach of its contract with [the contractor.]

8

*Id.* at 966-67.

Lexicon disagrees that the above cases are on point. Lexicon notes that *Collier Landholdings* did not discuss whether an obligation arising out of breach of contract triggers the "legally obligated to pay" provision of an insuring agreement. Lexicon thus concludes that its actions of repairing and remediation were performed as legal obligations to Nu-Iron and in an effort to avoid what would have been a certain lawsuit by Nu-Iron. In contradiction to *Collier Landholdings*, Lexicon cites the Court to other courts holding that a legal obligation can arise from a breach of contract.[6] Lexicon further contends that the ACE policy makes no distinction between tort and contractual damages, citing the Court to several treatises as well as case law that it says contradicts or distinguishes the cases cited by ACE.[7] Lexicon concludes that the plain meaning of the ACE policy, which provides coverage for the "occurrence" of "property damage" for which the insured is legally liable, does not make a distinction between contractual or tort basis for the insured's liability.

---

[6]*Potomac Ins. of Ill. v. Huang*, 2002 WL 418008 (D. Kan. Mar. 1, 2002) (holding that manufacturer acted reasonably and in good faith in making repairs in order to avoid an imminent lawsuit, and that manufacturer was thus "legally obligated to pay" for the repairs, for which it was entitled to reimbursement from the insurer); *Venture Encoding Serv., Inc. v. Atlantic Mutual*, 107 S.W.3d 729 (Tex. App. - Fort Worth May 1, 2003) (holding that "sums that the insured becomes legally obligated to pay as damages" included legal obligation under terms of the contract to remedy and correct mistakes in printing services).

[7]ACE relies on *Data Specialities, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909 (5th Cir. 1997) for the proposition that only tortious conduct, not breach of contract, will trigger the "legally obligated to pay as damages" provision of a foreign CGL policy. Lexicon distinguishes *Data Specialties* from the present case, and in addition cites the Court to the following: *Ins. Co. of N. Am. v. Aberdeen Ins. Services, Inc.*, 253 F.3d 878, 889 (5th Cir. 2001) (distinguishing *Data Specialties* because, in *Aberdeen*, the insured assumed responsibility for the acts of its subcontractor and sought coverage for contractual damages incurred as a result of conduct for which it was responsible); *Vandenberg v. Centennial Ins. Co.*, 21 Cal. 4th 815, 840, 982 P.2d 229, 245, 88 Cal. Rptr. 2d 366, 383 (1999) ("A reasonable layperson would certainly understand 'legally obligated to pay' to refer to any obligations which is binding and enforceable under the law, whether pursuant to contract or tort liability.").

The cases relied on by Lexicon are not on point with the ultimate issue in this case: whether a CGL policy provides coverage to a contractor for its subcontractor's faulty workmanship. The cases also are not based on Arkansas or Eighth Circuit law, and they relate only to Lexicon's argument on the issue of whether it was "legally obligated" to pay for repairs as defined in the ACE policy. Whether Lexicon was legally obligated to make the repairs is not dispositive of the question of whether the ACE policy insured every facet of that legal obligation.

The Court is hard pressed to see how the analysis in any other cases could be more on point than the principles annunciated in *Nabholz*, *Essex*, and *Collier Landholdings*. As those cases detail, under Arkansas law the purpose of a CGL policy is not to insure every legal obligation that a contractor might incur, and certainly not the legal obligation of guaranteeing the workmanship of one's subcontractor, for which purpose performance bonds exist. Faulty workmanship is not an "occurrence" covered by a CGL policy. Here, Lexicon's claim under the ACE CGL policy is based on the faulty workmanship of its subcontractor, Damus, which performed faulty welding on Silo No. 8, causing its collapse and damaging DRI product. Although Lexicon could be protected from Damus's negligence by a performance bond, such protection does not exist under ACE's CGL policy, since as a matter of law the collapse does not constitute an "occurrence" under that policy.[8]

**B.    NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT**

National Union seeks summary judgment on all claims for coverage under its insurance policy issued to Lexicon. National Union says that its policy expressly excludes coverage for

---

[8]The discovery deadline in this case has recently been extended to February 25, 2010, so additional evidence on these issues could conceivably be submitted. However, new evidence will not change the Court's holding that, as a matter of Arkansas law, the ACE CGL policy does not provide coverage for the kind of claim that Lexicon makes.

10

property damage occurring outside of the United States of America, meaning that Lexicon's claim for property damage that occurred in Trinidad is not covered. Although the policy contains a narrow exception where insurance for property damage is provided by a policy of underlying insurance, National Union says that Lexicon's claim for the damage that occurred in Trinidad is not within the coverage territory of the Liberty Mutual policy, which is the listed underlying insurance policy. Because Lexicon's claim is not covered by the Liberty Mutual policy, National Union concludes that there are no genuine issues of material fact as to whether its policy provides coverage to Lexicon for the Trinidad incident.

In support of its motion, National Union argues that: (1) its umbrella policy and the underlying Liberty Mutual policy are not ambiguous; (2) the National Union Foreign Liability Limitations Endorsement[9] does not cover Lexicon's claim for property damage in Trinidad; (3) the narrow exception in the endorsement, the Schedule of Underlying Insurance[10], lists Liberty Mutual and Fireman's Fund policies, not ACE; and (4) the plain language of the Liberty Mutual policy

---

[9]The Foreign Liability Limitation Endorsement reads: "This insurance does not apply to . . . Property Damage . . . that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada."

[10]The National Union policy defines "Scheduled Underlying Insurance" as follows:
1. The policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and
2. Automatically any renewal or replacement of any policy in Paragraph 1 above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

Scheduled Underlying Insurance does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

provides that Lexicon's work in Trinidad is not part of the "coverage territory" of that underlying insurance.[11]

The Court has concluded that, as a matter of law, the ACE policy does not provide coverage for Lexicon's claim related to the silo collapse. Therefore, even if the National Union policy incorporated the ACE policy as scheduled underlying insurance, or even if the listing of Liberty Mutual instead of ACE was a mistake, it would make no difference: the National Union policy would not provide coverage for Lexicon's claim. National Union's motion for summary judgment is granted.

C.  **LEXICON'S MOTIONS FOR SUMMARY JUDGMENT**

Lexicon has filed two motions for summary judgment: one on the ACE policy and the other on the National Union policy. Lexicon's arguments in favor of its motion are essentially the same arguments in their objection to the respective motions of ACE and National Union. Because the Court has granted summary judgment in favor of ACE, finding that as a matter of law the ACE

---

[11]Under the Liberty Mutual policy, the insurance applies only if the property damage occurs within the "coverage territory," which is defined as follows:
- a. The United States of America (including its territories and possessions), Puerto Rico and Canada;
- b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or
- c. Anywhere in the world, except with respect to injury or damage arising out of your "foreign based operations." As used herein, "foreign based operations" means:
    - (1) construction, fabrication, erection or installation operations outside the territory described in a. above;
    - (2) the manufacturing of goods or products outside the territory described in a. above; or
    - (3) the sale or distribution of goods manufactured outside the territory described in a. above at or from locations outside the territory described in a. above.

policy does not provide coverage for Lexicon's claim, Lexicon's motions for summary judgment against ACE and National Union are both denied.

## CONCLUSION

For the foregoing reasons, ACE's motion for summary judgment and National Union's motion for summary judgment are GRANTED. Document ## 39 and 75. Lexicon's motions for summary judgment are both DENIED. Document ## 86 and 102. Lexicon's claims against ACE and National Union are dismissed with prejudice.

IT IS SO ORDERED this 7th day of January, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE